IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:09-CR-34-FL-1
No. 7:12-CV-230-FL

| | | |
|---|---|---|
| BOBBY RAY HUNT, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

This matter comes before the court upon petitioner's motion to alter judgment, pursuant to Federal Rule of Civil Procedure 60 (DE 109). Petitioner filed a supplemental memorandum in support thereof, and the government filed a response in opposition. In this posture, the issues raised are ripe for ruling. For the following reasons, petitioner's motion is granted.

## BACKGROUND

Petitioner pleaded guilty on October 6, 2009, to being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. Prior to sentencing, the United States Probation Office prepared a presentence investigation report ("PSR"), determining that petitioner was subject to an enhanced mandatory statutory minimum sentence of 15 years, under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(1) (See PSR ¶¶ 54, 50). Petitioner's ACCA status was based upon four prior convictions described in pertinent part in a criminal history table in the PSR as follows:

| [¶] | Date of Arrest | Conviction/ Court | Date Sentence Imposed/ Disposition | Guideline/ Points |
|---|---|---|---|---|
| 10. | 1980 (Age 25) | Burning of an Uninhabited House (F) 80CRS25320 Robeson County Superior Court, Lumberton, NC | 02/24/1981: Pled guilty 10 to 20 years custody 03/03/1987: Discharged | 4A1.2(e) 0 |

The offense occurred on May 29, 1980.

\*     \*     \*

| 12. | 12/05/1980 (Age 25) | 1) Possess With Intent to Sell or Deliver a Controlled Substance (LSD) (F) 80CRS23589 2) Possession With Intent to Sell or Deliver a Controlled Substance (F) (3 counts) 3) Sell and Deliver a Controlled Substance (F) (2 counts) 80CRS23590, 80CRS23591, and 80 CRS24194 Robeson County Superior Court, Lumberton, NC | 02/05/1981: Pled guilty 1) 5 years custody, consecutive to 80CRS23590, 80CRS23591, and 80CRS24194 2 and 3) 2 to 4 years custody 03/03/1987: Discharged | 4A1.2(e) 0 |

On July 7, 1980, the defendant sold an unspecified amount of Lysergic Acid Diethylamide (LSD) to an individual for $20. As to Counts 2 and 3, the defendant sold and/or delivered unspecified quantities of marijuana to another individual on August 15, 1980; August 27, 1980; and December 5, 1980; respectively.

\*     \*     \*

| 15. | 07/02/1987 (Age 32) | Possession With Intent to Sell and Deliver Cocaine (F) Sell or Deliver Cocaine (F) 87CRS9451 Robeson County Superior Court, Luberton, NC | 09/29/1987: Pled guilty – 5 years custody, suspended, 4 years probation . . . . | 4A1.2(e) 0 |

On May 14, 1987, the defendant sold an unspecified amount of cocaine to an individual. In a light most favorable to the defendant, this conviction was not scored.

\*     \*     \*

| | | | |
|---|---|---|---|
| 19. | 02/23/1988 (Age 32) | Possession With Intent to Sell and Deliver Cocaine (F) Sell or Deliver Cocaine (F) 88 CRS2607 Possession with Intent to Sell and Deliver Marijuana (F) Sell or Deliver Marijuana (F) 88CRS2609 Robeson County Superior Court, Lumberton, NC | 12/05/1988: Pled guilty – 10 years custody 06/04/1992: Discharged | 4A1.1(a) 3 |

On November 20, 1987, the defendant sold unspecified amounts of cocaine and marijuana. The companion case of Possession of Cocaine (88CRS2608) was dismissed.

(PSR, DE 32, Sealed, at ¶¶ 10, 12, 15, 19).[1] The conviction described at paragraph 10 of the PSR hereinafter shall be referred to as petitioner's arson conviction. The convictions at paragraphs 12, 15, and 19 of the PSR hereinafter shall be referred to collectively as petitioner's "prior drug offense convictions" and individually as the 1981 convictions (PSR ¶12), the 1987 convictions (PSR ¶ 15), and the 1988 convictions (PSR ¶ 19).

On January 6, 2010, the court sentenced petitioner to a term of imprisonment of 180 months, the mandatory statutory minimum sentence under the ACCA. Petitioner appealed and the court of appeals affirmed his conviction on December 8, 2010. United States v. Hunt, 403 F. App'x 837 (4th Cir. 2010). Petitioner filed a petition for writ of certiorari, which petition was denied on October 3, 2011. Hunt v. United States, 132 S.Ct. 123 (2011).

On August 13, 2012, petitioner timely filed his first motion to vacate, set aside, or correct sentence, under 28 U.S.C. § 2255, (DE 53), challenging application of his prior drug offense

---

[1] In noting application of the ACCA enhancement the presentence report states "[p]ursuant to the convictions in paragraphs 11, 13, 16 and 20, the defendant is an armed career criminal." (Presentence report, ¶ 50). It is evident that the PSR erred in reference to these paragraph numbers, which are off by exactly one number in each instance from those identified above.

3

convictions as predicate convictions under the ACCA, in light of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc).[2]

On February 6, 2014, the court analyzed petitioner's claim and determined that petitioner's arson conviction and the 1988 convictions qualified as ACCA predicates. By contrast, the court determined that petitioner's 1981 convictions did not qualify as ACCA predicates. The court appointed counsel for petitioner and directed further briefing on whether the 1987 convictions qualified as ACCA predicates.

On May 5, 2014, upon consideration of supplemental briefing, the court determined that petitioner's 1987 convictions qualified as ACCA predicates. Accordingly, the court denied petitioner's motion to vacate. Petitioner appealed the denial of his first § 2255 motion, and the court of appeals held the appeal in abeyance pending decision in United States v. Newbold, 791 F.3d 455 (2015). On September 10, 2015, the court of appeals vacated and remanded this court's judgment on petitioner's first § 2255 motion. The court of appeals stated that, in light of Newbold, the district court should "reconsider its determinations that [petitioner's] 1981 convictions were not serious drug offenses under the ACCA and that [petitioner's] 1987 convictions were serious drug offenses." United States v. Hunt, 615 F. App'x 795, 796 (4th Cir. 2015) (emphasis added).

Following mandate on November 2, 2015, this court proceeded to reconsider its analysis of petitioner's 1981 convictions and 1987 convictions, without directing further briefing. In a

---

[2] In his September 20, 2012, response to the government's motion to dismiss, petitioner challenged the 1981 convictions (PSR ¶ 12); 1987 convictions (PSR ¶ 15); and 1988 convictions (PSR ¶ 19) (See DE 62). In his November 18, 2013, supplemental brief, petitioner suggested that he was challenging the 1981 convictions and the 1988 convictions. (See DE 66). In his papers filed in support of his first motion to vacate, petitioner did not challenge application of his arson conviction (PSR ¶ 10) as a predicate under the ACCA.

December 7, 2015, order that is subject of petitioner's instant Rule 60 motion, the court determined, contrary to its earlier analysis, that in light of Newbold, petitioner's 1981 convictions qualified as ACCA predicates, and petitioner's 1987 convictions did not qualify as ACCA predicates. As pertinent herein, the court reasoned that petitioner's 1981 convictions qualified because petitioner was adjudged guilty of the offense of possession with intent to sell "lysergic acid," and that this offense carried a maximum sentence of 10 years imprisonment. (See DE 86 at 6-7). Therefore, because the court determined petitioner still had three qualifying ACCA predicate convictions, (arson (PSR ¶ 10), the 1981 convictions (PSR ¶ 12), and the 1988 convictions (PSR ¶ 19)), the court denied petitioner's first § 2255 motion.

Petitioner appealed on February 9, 2016. In addition, on February 29, 2016, petitioner filed a motion to reopen the § 2255 proceedings under Rule 60(b), on the basis that his 1988 convictions did not qualify as ACCA predicates. This court provided notice on March 23, 2016, that it was inclined to grant the Rule 60(b) motion. However, on June 29, 2016, the court of appeals denied a certificate of appealability, dismissed the appeal, and denied petitioner's motion for limited remand based on this court's notice, reasoning that the Rule 60(b) motion constituted an unauthorized successive § 2255 motion. Upon mandate of the court of appeals, this court denied petitioner's Rule 60(b) motion on September 15, 2016.

On October 14, 2016, petitioner filed through appointed counsel a successive § 2255 motion arguing that his arson conviction was not a valid ACCA predicate in light of Johnson v. United States, 125 S.Ct. 2551 (2015). The court of appeals entered an order, however, on November 3, 2016, denying petitioner's motion for authorization to file a second or successive § 2255 motion.

5

This court, on December 6, 2016, dismissed petitioner's successive § 2255 motion for lack of jurisdiction.

Petitioner filed the instant motion pro se on December 22, 2016, arguing 1) that the district court made a mistake in its December 7, 2015, order in incorrectly referencing lysergic acid to be a Schedule I controlled substance under the 1981 version of N.C. Gen. Stat. § 90-89; and 2) that petitioner's previously-appointed counsel allowed the mistake to go unchallenged and undetected, constituting extraordinary circumstances warranting relief from the § 2255 judgment under Fed. R. Civ. P. 60(a) and (b)(6). Petitioner, through appointed counsel, moved for extension of time to file a supplemental memorandum in support of the motion. The court allowed the motion for extension and directed the United States Probation Office to provide petitioner and the government with a copy of all materials relating to petitioner's <u>1981</u> convictions.

Petitioner's previously-appointed counsel then withdrew, and new appointed counsel entered an appearance. Petitioner filed supplemental memorandum through newly-appointed counsel on March 28, 2017. The government filed a response on May 18, 2017, assuming that the instant motion properly should be considered pursuant to Fed. R. Civ. P. 60, but arguing that petitioner's motion is without merit where a preponderance of the evidence supports the court's judgment in the instant § 2255 matter.

## COURT'S DISCUSSION

A.     Standard of Review

"The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a). "The court may do so on motion or on its own, with or without notice." <u>Id.</u> In addition, "[o]n motion and

just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . [a] reason that justifies relief." Fed. R. Civ. P. 60(b).

"Rule 60(b) has an unquestionably valid role to play in habeas cases." Gonzalez v. Crosby, 545 U.S. 524, 534 (2005). A Rule 60(b) motion cannot, however, be used to "add a new ground for relief" or to "attack[] the federal court's previous resolution of a claim on the merits," for such arguments properly would be dismissed as successive habeas claims. Id. at 532. Instead, it may be used to attack "some defect in the integrity of the federal habeas proceedings." Id. For example, Rule 60(b) arguments that the district court had misstated the trial record, misquoted trial testimony, or mistakenly attributed statements to witnesses, in denying habeas relief, properly are addressed under the standard for Rule 60(b) relief. See United States v. McRae, 793 F.3d 392, 396 (4th Cir. 2015).

"The consideration of Rule 60(b) motions proceeds in two stages." Nat'l Credit Union Admin. Bd. v. Gray, 1 F.3d 262, 264 (4th Cir. 1993). First, movant must meet "three threshold conditions[:] . . . that his motion is timely, that he has a meritorious defense to the action, and that the opposing party would not be unfairly prejudiced by having the judgment set aside." Id. (quotations omitted). "Once the movant has met the threshold showings, he must satisfy one of the six enumerated grounds for relief under Rule 60(b)." Id. at 266. The "catch-all phrase—any other reason justifying relief" at Rule 60(b)(6) "is only to be invoked upon a showing of exceptional circumstances." Id.

B.  Analysis

   1.  Jurisdiction

The court considers as a threshold matter whether petitioner's motion presents arguments properly addressed under Rule 60 or whether it presents claims properly characterized as second or successive § 2255 claims that the court lacks jurisdiction to consider. As noted above, the government assumes the court has jurisdiction to consider petitioner's arguments.

While the question is close, petitioner's arguments in the instant motion properly are to be considered under Rule 60 standards, considering the unique nature of the arguments raised and the circumstances of the habeas proceedings in this matter. On the one hand, petitioner's arguments could be characterized as an attack on the court's "previous resolution of a claim on the merits," because the court made its mistake in an order denying petitioner's § 2255 claim. Gonzalez, 545 U.S. at 534. On the other hand, however, petitioner attacks a defect in the integrity of the habeas proceeding, because the court's mistake precluded the court from examining an issue of fact that is critical to the resolution of the merits of petitioner's § 2255 claim, as discussed below. Specifically, but for the court's mistake in referencing the wrong drug schedule, the habeas proceedings would have proceeded to the point of further factual development and full merits determination, requiring analysis of state court documents bearing on petitioner's 1981 convictions.

Petitioner's motion also raises issues regarding whether petitioner unfairly was precluded from adjudicating the merits of his claim concerning the 1981 convictions because of the unique procedural posture of this case. Because this court determined early in the habeas proceedings that petitioner's 1981 convictions did not qualify as ACCA predicates, (see February 2, 2014, Order (DE

8

68) at 5),³ petitioner did not have reason to address disputed factual issues regarding the nature of his 1981 convictions. In addition, the court of appeals remand order provided no analysis regarding the nature of his 1981 convictions, other than directing the court to reconsider its prior determination in light of Newbold. The court of appeals did not request briefing concerning petitioner's 1981 convictions and the parties on appeal did not raise any issue with them. (See Appeal No. 14-6703, Doc: 16-1; 30). Moreover, petitioner was not invited to submit supplemental briefing, and his counsel did not seek to do so on the issue of petitioner's 1981 convictions either before or after the court's December 7, 2015, order. In sum, because of the nature of the court's mistake and the unique procedural circumstances of this case, the instant motion properly is treated as a valid Rule 60 motion attacking the integrity of the habeas proceedings. Accordingly, the court turns next to address the merits of the motion.

    2.    Merits

        a.    Rule 60 motion

As noted above, petitioner seeks relief under both Rule 60(a) and Rule 60(b). Because the court determines that relief is warranted under Rule 60(b), the court does not reach the issue of relief under Rule 60(a).

As an initial matter, petitioner has met the threshold conditions for relief. The instant motion was filed within a reasonable time, specifically within one year of his receipt of the court's order and not unduly delayed, taking into account petitioner's representation by appointed counsel. The

---

    ³ That order also contained an error in its analysis of petitioner's 1981 convictions, albeit one that favored petitioner. In particular, the court stated that North Carolina law provided "a term of imprisonment of not more than five years" for each of the offenses in the 1981 convictions, including the offense of possession with intent to sell or deliver LSD. (DE 68 at 4-5).

9

government also has not demonstrated any unfair prejudice by having the court's prior order set aside. In addition, as discussed below, petitioner has demonstrated that he has a meritorious § 2255 claim. Accordingly, because of the impact of the court's mistake on resolution of that claim, petitioner has demonstrated exceptional circumstances justifying relief under Rule 60(b)(6).

In particular, it is undisputed that the court erred in its December 7, 2015, order in stating that "[L]ysergic acid was classified at the time as a Schedule I substance" under North Carolina law in 1981. (DE 86 at 7). To the contrary, "lysergic acid" was classified a Schedule III substance under North Carolina law in 1981. See N.C. Gen. Stat. § 90-91(b)(4) (1981). This error was determinative of petitioner's claim based upon the court's findings then in the record, because the offense of distribution of a Schedule I substance carried a maximum penalty of ten years, whereas the offense of distribution of a Schedule III substance carried a maximum penalty of only five years. See N.C. Gen. Stat. § 90-95(b) (1981). As an offense carrying a maximum penalty of only five years, it does not qualify as an ACCA predicate. See 18 U.S.C. § 924(e)(2)(A). In turn, without the 1981 convictions as an ACCA predicate, petitioner does not have three qualifying ACCA predicate convictions, thus entitling petitioner to vacatur of his sentence imposed "in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

As discussed below, the government argues that correction of the court's error in its December 7, 2015, order opens up a new factual question of the nature of petitioner's 1981 convictions. According to the government, petitioner in fact was convicted of distribution of "Lysergic acid diethylamide" ("LSD"), and not distribution of "lysergic acid," as the court stated in its December 7, 2015, order. This is a factual question that the court has not addressed previously, which the court will turn to next. For purposes of the instant Rule 60 motion, it suffices

that petitioner has demonstrated exceptional circumstances for striking the erroneous statement in the court's December 7, 2015, order, vacating the court's judgment on petitioner's § 2255 motion, and reopening § 2255 proceedings for determination of the ultimate factual issue on the merits raised by petitioner's § 2255 claim.

Accordingly, petitioner's motion to alter or amend the § 2255 judgment is granted and the court vacates its December 7, 2015, order and judgment denying relief on petitioner's first § 2255 motion. The court reopens petitioner's § 2255 motion in order to address the merits of petitioner's claim that his 1981 convictions do not qualify as proper ACCA predicates.

        b.        Section 2255 motion

              i.        Standard of review

A petitioner seeking relief pursuant to 28 U.S.C. § 2255 must show that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." Id. § 2255(b). "A court may entertain and determine such motion without requiring the production of the prisoner at the hearing." Id.

"Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence." Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958); see, e.g., United States v.

Basham, 789 F.3d 358, 379 (4th Cir. 2015) (applying preponderance of evidence standard to § 2255 claim); United States v. Nicholson, 611 F.3d 191, 196–97 (4th Cir. 2010) (same).

"The burden of showing something by a preponderance of the evidence simply requires the trier of fact to believe that the existence of a fact is more probable than its nonexistence before [it] may find in favor of the party who has the burden to persuade the [court] of the fact's existence." Metro. Stevedore Co. v. Rambo, 521 U.S. 121, 137 (1997) (quotations omitted). "A preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it." Id. (quotations omitted). Under this standard, petitioner must establish that a fact is true "more likely than not." Herman & MacLean v. Huddleston, 459 U.S. 375, 390 (1983). "[T]he preponderance standard allows both parties to share the risk of error in roughly equal fashion, except that when the evidence is evenly balanced, the party with the burden of persuasion must lose." Rambo 521 U.S. at 137 (quotations and internal citations omitted).

      ii.     Analysis

The ACCA imposes a minimum sentence of fifteen years if a defendant has three prior convictions for "serious drug offense[s]" or "violent felon[ies]." 18 U.S.C. § 924(e)(1). The term "serious drug offense" means, in pertinent part, a drug offense under state law "for which a maximum term of imprisonment of ten years or more is prescribed by law." § 924(e)(2)(A).

In Newbold, the Fourth Circuit held that Simmons applies to the determination of whether a prior offense is a predicate under the ACCA and that such a claim may be raised in a § 2255 proceeding. See 791 F.3d at 459-61. Such a claim "exposes the sentence [petitioner] received on the felon in possession count as an illegal one." Id. at 460. In two further respects, as pertinent here, Newbold clarified and confirmed the procedure under Simmons for analyzing prior convictions as

predicates under the ACCA. First, Newbold clarified that the court must consider the applicable punishment for each "offense" or "offenses" in a judgment or consolidated judgment. See id. at 461-62. Second, Newbold confirmed that the court must "examin[e] . . . North Carolina's sentencing regime" at the time of the predicate conviction. Id. at 461.

For petitioner's 1981 convictions, petitioner was sentenced during a time in which "[t]he accepted rule in North Carolina . . . was that within the limits of the sentence permitted by statute the extent of punishment is a matter committed to the sound discretion of the trial judge, and reviewable only upon a showing of gross abuse of discretion." State v. Thompson, 310 N.C. 209, 216-17, 219 (1984) overruled on other grounds by State v. Vandiver, 321 N.C. 570 (1988). Before enactment of structured sentencing legislation effective in July 1981, "the sentencing range ordinarily could be determined simply by reference to the statute defining the offense." State v. Lopez, 363 N.C. 535, 539 (2009).

The factual issue now presented by petitioner's § 2255 motion is whether one of his 1981 convictions is for the offense of distribution of "lysergic acid" or LSD.[4] If the offense is distribution of LSD, a Schedule I substance, the offense carried a maximum term of imprisonment of ten years. See N.C. Gen. Stat. § 90-95(b)(1) (1981); Id. § 90-89(c)(9) (1981). By contrast, if the offense is distribution of "lysergic acid," a Schedule III substance, the offense carried a maximum term of imprisonment of five years. See N.C. Gen. Stat. § 90-95(b)(2) (1981); Id. § 90-91(b)(4) (1981).

To make this factual determination, the court must examine a "limited list of generally available documents that courts . . . consult for the purpose of determining if a past conviction

---

[4] The government does not dispute that the remaining offenses for which petitioner was convicted in his 1981 convictions, for distribution of marijuana, carried a maximum term of imprisonment of five years.

13

qualifies as an ACCA predicate." United States v. Rodriquez, 553 U.S. 377, 389 (2008). These documents comprise the "judgment of conviction," the "charging document," and the "plea colloquy." Id.; see Shepard v. United States, 544 U.S. 13, 20 (2005); Simmons, 649 F.3d at 243.

In this instance, the available documents include contradictory information. The court begins with the judgment, which in initial part describes the offense to which petitioner pleaded guilty:

> In open court, the defendant appeared for trial upon the charge or charges of possession with the intent to sell or deliver a controlled substance, and selling or delivering a controlled substance - to wit: lysergic acid;
>
> and thereupon entered a plea of guilty.
>
> Having plead guilty of the offense of possession with the intent to sell or deliver a controlled substance, and selling or delivering a controlled substance - to wit: lysergic acid: which is a violation of G.S. 90-95(a)(1), and of the grade of felonies, which carrys a maximum sentence of ten(10) years, counts being consolidated for judgment.

(DE 120-2 at 2).

Initially, in repeating the controlled substance involved as "lysergic acid," the judgment is clear and unambiguous as to the substance involved. There is no mention of LSD or "lysergic acid diethylamide." N.C. Gen. Stat. § 90-89(c)(9). In addition, the referenced statutory section, N.C. Gen. Stat. § 90-95(a)(1), properly is referenced as the statutory section making it unlawful for any person to "manufacture, sell or deliver, or possess with intent to manufacture, sell or deliver, a controlled substance." N.C. Gen. Stat. § 90-95(a)(1) (1981).

However, the judgment introduces ambiguity in describing the maximum term of sentence, by stating that the offense carries "a maximum sentence of ten (10) years." As noted previously, that

14

maximum sentence pertains to "Schedule I or II" substances, like LSD, not Schedule III substances like "lysergic acid." See N.C. Gen. Stat. § 90-95(b)(1) (1981); Id. § 90-89(c)(9) (1981).

The contradiction in the judgment is not resolved by the actual sentence imposed, which is set forth as follows.

> It is ADJUDGED that the defendant be imprisoned for the term of not less than five (5) years, nor more than five (5) years, in the custody of the North Carolina Department of Corrections. This sentence is to begin at the expiration of the sentence of not less than two (2) years, nor more than four (4) years, imposed this date.
>
> The execution of this sentence is suspended, however, for five years upon compliance with the following conditions, to which the defendant gave assent: The Defendant is placed on probation for a period of five (5) years, upon the usual conditions of probation and the following special conditions:
> 1) That at any time, the defendant is to submit to searches of his person, vehicle, or place of residence, by his probation officer, for drug related purposes.
> 2) That he be gainfully employed, with full time work, as approved by his probation officer.
> 3) That he pay restitution in the amount of $70.00, into the Clerk of Superior Courts office, to be disbursed to the Robeson County Sheriff Department.
> 4) That he pay attorney fees in the amount of $_____ to be disbursed to the State of N. C.
>
> This 5th day of February, 1981.
>
> Presiding Judge
> Donald L. Smith
>
> Attorney for Defendant: Hugh Rogers – C.A.
> Attorney for the State: Richard Townsend

(DE 120-2 at 2). At five years imprisonment, suspended, the actual sentence imposed thus is not determinative of the maximum sentence prescribed by law, as it is a sentence that could be imposed if the substance involved is either LSD or "lysergic acid."

The charging document, an indictment signed ten days earlier than the judgment, provides additional evidence in favor of the government's position, where it charges petitioner unambiguously with distribution of "Lysergic Acid Diethylamide (LSD)":

15

> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the ___7th___ day of ___July___, 19_80_, in ___Robeson___ County ___Bobby Hunt___ unlawfully and wilfully did feloniously possess with intent to sell or deliver a controlled substance, to-wit: Lysergic Acid Diethylamide (LSD), which is included in Schedule I of the North Carolina Controlled Substance Act, against the form of the statute in such case made and provided and against the peace and dignity of the State.
>
> THE JURORS FOR THE STATE UPON THEIR OATH PRESENT that on or about the 7th day of July, 1980, in Robeson County BOBBY HUNT unlawfully and wilfully did feloniously sell or deliver to Mary Green a controlled substance, to-wit: Lysergic Acid Diethylamide (LSD), which is included in Schedule I of the North Carolina Controlled Substance Act, for the amount of $20.00, against the form of the statute in such case made and provided and against the peace and dignity of the State.

(DE 123-2).

There is no plea colloquy or other separate document memorializing terms of a plea. Accordingly, the court must make findings as to the nature of the offense of conviction on the basis of the judgment and the indictment. See Rodriquez, 553 U.S. at 389; Shepard, 544 U.S. at 20; Simmons, 649 F.3d at 243.

In viewing the evidence in the record on the whole, the court recognizes that it is subject reasonably to competing interpretations. On the one hand, the indictment and the statement of maximum sentence in the judgment provide substantial evidence that petitioner was convicted of the offense of possession with intent to sell or deliver LSD. On the other hand the statements in the judgment describing the offense to which petitioner pleaded guilty, as well as the actual sentence imposed, coupled with the fact that petitioner pleaded guilty to the offense, provides substantial evidence that petitioner was convicted of the offense of possession with intent to sell or deliver "lysergic acid."

On the whole, while a close question, the court finds that the balance of the evidence favors petitioner, meaning that it is more likely than not that petitioner was convicted of the offense of

possession with intent to sell or deliver "lysergic acid." In weighing the evidence of the indictment against the language in the judgment, the court gives greater weight to the language and structure of the judgment, and the proceedings described therein, rather than the terms of the indictment. Because the judgment states that petitioner entered a plea of guilty to a different offense than stated in the indictment, it is reasonable to infer that petitioner pleaded guilty to a less serious offense than originally charged in the indictment. See, e.g., State v. Melton, 307 N.C. 370, 374 (1983) ("In cases where a defendant is convicted of or pleads guilty to an offense different from that alleged in the bill of indictment . . . 'the offense' refers to the criminal charge of which the defendant is convicted or to which he pleads guilty."). In this manner, the judgment permits a plausible inference of a clerical error in the statement of maximum sentence set forth in the judgment. The court recognizes that a contrary inference is also reasonable, namely that petitioner pleaded guilty precisely to the offense charged, and that the clerk made a clerical error in the judgment in stating the offense to which petitioner pleaded guilty.

The court finds the inference of a clerical error in the description of the offense less plausible than the inference of a clerical error in the statement of maximum sentence for several reasons. First, the judgment is a form document that has ample room for writing out the full name of the controlled substance involved in the offense, but it states only "lysergic acid" followed by a semicolon, with much space to spare. (DE 120-2 at 2). Second, the judgment references "lysergic acid" twice in this manner, once in describing the offense upon which petitioner appeared "[i]n open court," and a second time in describing the offense to which defendant pleaded guilty. (Id.). Third, the description of the offense in the indictment is stated differently in other respects from the description in the judgment, tending to show that a clerk did not just make a clerical error in copying

17

the offense language from the indictment but rather wrote out the offense anew based upon proceedings in open court. In particular, the indictment states petitioner:

> unlawfully and wilfully did feloniously possess with intent to sell or deliver a controlled substance, to wit: Lysergic Acid Diethylamide (LSD), . . . .

(DE 120-1 at 2). By contrast, the judgment states petitioner pleaded guilty to:

> possession with the intent to sell or deliver a controlled substance, and selling or delivering a controlled substance – to wit: lysergic acid: . . . .

(DE 120-2 at 2). In sum, while the court recognizes the evidence is open to multiple interpretations, these factors help to push the balance of the evidence in favor of petitioner.

In so finding, the court has considered several arguments by the government that do not serve to bring the balance of evidence back in its favor. First, the government argues that "[t]he prior conviction documents provided by the U.S. Probation Officer reveal no plea colloquy suggesting that Petitioner pleaded to any other substance than the one he was charged with: LSD, a Schedule I substance." (DE 123 at 10-11). However, the absence of a plea colloquy in this instance favors neither petitioner nor the government. Absent a plea colloquy, the language in the judgment provides the sole evidence of the guilty plea. It confirms, as an initial matter, that petitioner in fact did plead guilty rather than receive a verdict at trial. It also states that petitioner "entered a plea of guilty[,] [h]aving plead guilty of the offense of possession with the intent to sell or deliver a controlled substance, and selling or delivering a controlled substance – to wit; lysergic acid: . . . ." (DE 120-2 at 2). Accordingly, although contrary inferences also are plausible, the judgment permits a reasonable inference, in the absence of a plea colloquy, that petitioner pleaded guilty to an offense involving a different, less serious, controlled substance than charged in the indictment.

Next, the government argues that the state court judgment for the offenses underlying petitioner's other 1981 convictions, involving distribution of marijuana, tend to show that the state court readily adjusted the statutory maximum reflected in the judgments "as necessary to fit the offense." (DE 123 at 12). The judgment for the marijuana offenses, however, is only minimally helpful to the analysis of the error in the judgment for the "lysergic acid" offense. While the judgment for the marijuana offenses may tend to show the state court understood there were different statutory maximum penalties for different controlled substances, it does not meaningfully tip the balance of the evidence in favor of the government on the issue of clerical errors in the judgment for the "lysergic acid" offense.

Finally, the government suggests the PSR is additional evidence showing that petitioner's 1981 convictions involved the substance LSD and not "lysergic acid." Indeed, the PSR states unequivocally that petitioner was convicted of possession with intent to sell or deliver LSD, and it tracks the language of the state court indictment in stating that petitioner sold "Lysergic Acid Diethylamide (LSD) to an individual for $20." (DE 32 ¶12). The PSR, however, is not itself evidence that the court is authorized to consult in determining the nature of petitioner's ACCA predicates, when the state court record of conviction is in dispute. See Simmons, 649 F.3d at 243. Indeed, the probation office itself was the source of the state court documentation that the court has analyzed in the instant order. For purposes of the instant motion, the PSR at best serves to illustrate the risk of sentencing error that can arise where the PSR suggests the state court record is settled where in fact it is not settled.

In sum, because petitioner's 1981 convictions do not qualify as ACCA predicates, petitioner does not qualify for an ACCA enhancement and erroneously was subject to a statutory minimum

sentence of 180 months in prison, instead of a statutory maximum of 120 months in prison. Therefore, the court grants petitioner's § 2255 motion, vacates his sentence, and sets the matter for resentencing at the next available term of court.

## CONCLUSION

Based on the foregoing, the court GRANTS petitioner's motion to alter judgment, pursuant to Federal Rule of Civil Procedure 60 (DE 109), and VACATES the court's December 7, 2015, order and judgment in the instant § 2255 matter (DE 86, 87). In addition, the court GRANTS petitioner's reopened § 2255 motion (DE 53), VACATES petitioner's sentence (DE 34), and sets the matter for resentencing. The clerk is DIRECTED to schedule petitioner for resentencing at the next available regularly scheduled term of court. The government is DIRECTED to ensure petitioner's timely writ, transportation, and housing for the resentencing hearing. The United States Probation Office is DIRECTED to investigate, prepare, file under seal, and publish to the appropriate parties an updated presentence report or sentencing memorandum, including recalculation of petitioner's corrected advisory guidelines range, within **seven days** of the date of resentencing.

SO ORDERED, this the 12th day of June, 2017.

_____
LOUISE W. FLANAGAN
United States District Judge